T.A. BLACKBURN LAW, PLLC
Tyrone A. Blackburn, Esq.
NJ Attorney ID No. 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel.: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
Attorneys for Plaintiff Montel Pitt

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MONTEL PITT,<br>Plaintiff,<br>v.<br><br>JARED CRUZ,<br>MARK SANTIAGO,<br>THOMAS HOFFMAN, and<br>ZACHARY FRAME, each in his individual and official capacities;<br>JOHN DOE POLICE OFFICERS 1-5 (fictitious names), and<br>DOE MUNICIPALITY 1-5 (fictitious names),<br>Defendants. | Civil Action No. 26-14042<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff Montel Pitt ("Plaintiff" or "Mr. Pitt"), by his attorneys, T.A. Blackburn Law, PLLC, by way of Complaint against the Defendants, alleges as follows:

PRELIMINARY STATEMENT

1. In the early morning of June 30, 2024, an Exit 6 bouncer in North Wildwood pushed Plaintiff, then an off-duty New Jersey State Trooper, and struck him in the face. North Wildwood police officers did not arrest the bouncer. They handcuffed Plaintiff, took him to police headquarters, and charged him with disorderly conduct.
2. The sworn charge accused Plaintiff of "striking another individual with a closed fist multiple times." No police report written that night says that. The officer listed as the arresting officer wrote that he was "unable to tell if the punch struck the bouncer." The officer who handcuffed Plaintiff wrote that he arrested Plaintiff for continuing to "argue with employees."
3. The charge stayed pending for almost a year. It cost Plaintiff his police powers, his pay, and his reputation, until it was dismissed on June 17, 2025. Plaintiff brings this action under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against the officers who fabricated the charge, prosecuted him on it, and stood by while it issued, and against the public entities whose policies, customs, and failures to train and supervise caused those violations.

THE PARTIES

4. Plaintiff Montel Pitt is an adult individual residing at 20 Chestnut Avenue, Cape May Court House, New Jersey 08210. At all relevant times he was a sworn member of the New Jersey State Police.
5. Defendant Sergeant Mark Santiago, Badge No. 251 ("Santiago"), was at all relevant times a sergeant of the North Wildwood Police Department ("NWPD"), 901 Atlantic Avenue,

North Wildwood, New Jersey 08260. On the night of June 30, 2024, he supervised the on-scene officers, using call sign 230.

6. Defendant Officer Jared Cruz, Badge No. 278 ("Cruz"), was at all relevant times an NWPD police officer, 901 Atlantic Avenue, North Wildwood, New Jersey 08260. Cruz signed the Complaint-Summons charging Plaintiff and processed and held Plaintiff at NWPD headquarters.
7. Defendant Thomas Hoffman, a Class II Special Law Enforcement Officer, Badge No. 283 ("Hoffman"), was at all relevant times assigned to the NWPD, 901 Atlantic Avenue, North Wildwood, New Jersey 08260. NWPD arrest records list Hoffman, under identifier 2305, as the arresting officer on the disorderly persons charge against Plaintiff.
8. Defendant Officer Zachary Frame, Badge No. 274 ("Frame"), was at all relevant times an NWPD police officer, 901 Atlantic Avenue, North Wildwood, New Jersey 08260. Frame told Plaintiff he was under arrest, handcuffed him, and transported him to NWPD headquarters.
9. Defendants John Doe Police Officers 1-5 are fictitiously named NWPD officers, supervisors, or employees whose identities are not presently known to Plaintiff. They participated in, supplied information for, reviewed, approved, or failed to intervene in the charging and prosecution of Plaintiff. Plaintiff will amend this pleading to state their true names when they become known.
10. Defendants Doe Municipality 1-5 are fictitiously named municipalities, counties, or other public entities, in addition to the City of North Wildwood, whose identities as responsible parties are not presently known to Plaintiff. On June 30, 2024, and during the prosecution that followed, each of them employed, appointed, assigned, trained, supervised, or controlled one or more of the Officer Defendants, or established, maintained, or ratified the policies, customs, and practices described in this Complaint, including those of the NWPD. Each is a "person" within the meaning of 42 U.S.C. § 1983 and N.J.S.A. 10:6-2(c). Plaintiff will amend this pleading to state their true names when they become known.
11. Santiago, Cruz, Hoffman, Frame, and John Doe Police Officers 1-5 are referred to collectively as the "Officer Defendants." At all relevant times each Officer Defendant was employed by or assigned to the NWPD, a department of the City of North Wildwood (the "City"), and acted under color of state law and within the scope of that employment. Doe Municipality 1-5 are referred to collectively as the "Doe Municipal Defendants."
12. Each of Santiago, Cruz, Hoffman, and Frame is sued in his individual capacity and in his official capacity as an officer of the City of North Wildwood Police Department.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). It has supplemental jurisdiction over Plaintiff's claims under the New Jersey Civil Rights Act under 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy.
14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). The events giving rise to Plaintiff's claims occurred in North Wildwood, Cape May County, New Jersey, and, upon information and belief, each Defendant resides in New Jersey. Allocation to the Camden Vicinage is appropriate under L.Civ.R. 40.1(a) because the claims arose in Cape May County.

## FACTUAL ALLEGATIONS

### The Exit 6 Encounter

15. Shortly before 1:51 a.m. on June 30, 2024, Plaintiff and his brother, Tyler Short, were in line outside the Exit 6 bar and nightclub in North Wildwood. Plaintiff was off duty.

16. While Plaintiff was in line, another patron, Jonathan Downey, pushed Plaintiff and Short. NWPD Officer Alexander D'Attilio, Badge No. 279, arrested Downey. D'Attilio's report, which Santiago reviewed, records that Downey extended his arms in an effort to push Short and Plaintiff and that Plaintiff's shirt was torn.
17. After the Downey incident, Exit 6 staff told Plaintiff and Short they would not be admitted. An argument followed at the entrance between Plaintiff and Short, on one side, and Exit 6 bouncers, on the other.
18. During that encounter, Exit 6 bouncer Christian Dipentino pushed Plaintiff and struck him in the face with an open hand. Upon information and belief, Exit 6's own surveillance video shows Dipentino pushing and attempting to strike Plaintiff, and does not show Plaintiff striking anyone with a closed fist.
19. Upon information and belief, Dipentino has since described the physical contact between himself and Plaintiff as grabbing, pushing, and shoving. He has not described Plaintiff as punching him repeatedly with a closed fist.
20. Immediately after Dipentino's strike, NWPD officers converged on Plaintiff and Short.

<u>What the Officers Saw</u>

21. Hoffman was on foot patrol at the northwest corner of Walnut and Olde New Jersey Avenues. In his Incident Report No. 24-24670, Hoffman wrote that he saw Plaintiff make "an aggressive motion consistent with someone throwing a punch." He also wrote: "Due to my proximity from the incident I was unable to tell if the punch struck the bouncer."
22. Hoffman's report identifies both Complaint-Summons No. 0507-S-2024-000077, which charged Short, and Complaint-Summons No. 0507-S-2024-000078, which charged Plaintiff. Hoffman therefore knew of, and participated in documenting, the charge against Plaintiff.
23. Hoffman's report states that Short, not Plaintiff, made "an aggressive motion consistent with someone slapping someone." Hoffman arrested Short.
24. Frame arrested Plaintiff. Frame's Supplemental Investigation Report No. 24-24670A gives the basis for that arrest: "Due to Pitts continuing to remain in front of Exit 6 and argue with employees causing public alarm I advised Pitts he was being placed under arrest for Disorderly Conduct."
25. Frame's report does not state that Plaintiff struck anyone.
26. Frame handcuffed Plaintiff and placed him in the rear of marked patrol unit #206. Frame and Hoffman transported Plaintiff and Short to NWPD headquarters.
27. Santiago, the on-scene sergeant, radioed dispatch that two adult males were under arrest and assigned the arrests to patrol units. Santiago's body-worn camera recorded an exchange identifying the arrest of Plaintiff as "Hoffman's."
28. At the scene, Plaintiff told the officers that the bouncer had struck him in the face for no reason and that he had never hit anyone. He asked the officers to look at his hands.
29. Recorded audio from the patrol vehicle reflects that, during the transport, the accusation communicated to Plaintiff was that he had "slapped" or "smacked" an Exit 6 employee.
30. No Exit 6 employee was arrested or charged for pushing or striking Plaintiff that night.

<u>The Sworn Charge</u>

31. At NWPD headquarters, Cruz held Plaintiff in a holding area from approximately 2:05 a.m. and booked him at approximately 2:30 a.m. Cruz released Plaintiff on a summons at approximately 3:00 a.m. Sergeant Eric Nevil, Badge No. 253, signed the prisoner property record as supervisor.
32. Cruz, as complainant, signed Complaint-Summons No. 0507-S-2024-000078 "[b]y certification or on oath." It charged Plaintiff with disorderly conduct under N.J.S.A. 2C:33-

2a(1) for "engaging in fighting, specifically by striking another individual with a closed fist multiple times."

33. The Complaint-Summons recites that the complaining witness is a law enforcement officer and that a judicial probable cause determination was therefore not required. No judicial officer reviewed the factual basis for the charge before it issued.
34. No NWPD report from June 30, 2024 states that Plaintiff struck anyone with a closed fist, or that he struck anyone multiple times. Hoffman, the arresting officer of record, wrote that he could not tell whether any punch connected. Frame, who handcuffed Plaintiff, wrote that the basis for the arrest was arguing. The accusation relayed to Plaintiff during transport was a slap.
35. Upon information and belief, Cruz did not personally witness Plaintiff strike anyone. His body-worn camera footage did not capture any such strike.
36. Cruz knew, or recklessly disregarded, that no officer had seen Plaintiff strike anyone with a closed fist multiple times. He swore to that conduct anyway, in a charging instrument he knew would be used to prosecute Plaintiff.
37. Upon information and belief, the "closed fist multiple times" allegation was supplied to Cruz by, or was adopted with the knowledge and approval of, one or more of Hoffman, Frame, Santiago, and John Doe Police Officers 1-5. Each of them knew that his own observations did not support it.
38. Upon information and belief, Hoffman, Frame, and Santiago were at or in communication with NWPD headquarters while Plaintiff was being processed, between approximately 2:05 a.m. and 3:00 a.m., and knew or had reason to know the factual basis Cruz was swearing to. Each had a realistic and reasonable opportunity to correct it or to stop the charge from issuing. None did.
39. Hoffman's report was reviewed and approved by Sergeant Nevil. Frame's report was reviewed and approved by Sergeant Mark Elliott, Badge No. 256. Neither supervisor corrected, questioned, or withdrew the sworn charge, even though neither report supported it.

<u>The Prosecution and Its Consequences</u>

40. At approximately 5:21 a.m. on June 30, 2024, the New Jersey State Police seized Plaintiff's service firearm and badge and relieved him of his police powers because of the NWPD charge.
41. On or about July 2, 2024, NWPD Lieutenant Brian Harkins, Badge No. 245, provided NWPD body-worn camera footage, in-vehicle recordings, police reports, and Exit 6 surveillance footage to the New Jersey State Police. NWPD command therefore had that footage and those reports within days of the arrest.
42. Despite that evidence, no Officer Defendant and no NWPD supervisor withdrew, amended, or corrected the sworn charge against Plaintiff.
43. When Plaintiff first tried to report the bouncer's assault in the days after his arrest, NWPD refused to accept his complaint. On September 5, 2024, Plaintiff returned to NWPD headquarters and reported that Dipentino had pushed him and struck him in the face with an open hand.
44. Because of the pending charge, Plaintiff was suspended without pay from the New Jersey State Police beginning July 8, 2024.
45. Plaintiff was required to answer the charge and to appear, through counsel, in the Municipal Court for approximately one year. During that time he remained subject to the court's jurisdiction and to the conditions of the summons.

46. In October 2024, Plaintiff's criminal defense counsel advised the Assignment Judge in writing, with a copy to the municipal prosecutor, that the video evidence exonerated Plaintiff. The charge nevertheless remained pending.
47. On June 17, 2025, the charge against Plaintiff was dismissed. The record of the arrest and charge was later expunged under Order No. XP-CPM-25-001549.
48. The dismissal was a termination of the prosecution without a conviction. Plaintiff was never convicted of any offense arising from the events of June 30, 2024.

The Official Policies and Customs Behind the Charge

49. Under the charging process in use at the NWPD, an officer could issue a Complaint-Summons for a disorderly-persons offense without any judicial probable cause determination. That made NWPD's own supervisory review the only check on whether the sworn factual basis for a charge was supported before a person was charged.
50. In Plaintiff's case, that review failed at every level. Three NWPD sergeants — Santiago, Nevil, and Elliott — reviewed reports, approved reports, or supervised the arrest and processing. None of them reconciled the sworn "closed fist multiple times" allegation with reports that said no such thing.
51. Upon information and belief, the NWPD, through its Chief of Police and police command, has maintained a custom of approving disorderly-persons charges on the accounts of bar and nightclub staff in North Wildwood's entertainment district, without independent verification by officers and without reconciling those charges with officers' own observations. It has also maintained a custom of declining to take or pursue complaints by patrons against those same staff.
52. Upon information and belief, the NWPD has failed to train and supervise its officers, including its Class II Special Law Enforcement Officers, on probable cause for charges based on disputed accounts from bar staff, and on the duty to state the factual basis of a sworn charge truthfully and accurately.
53. The need for that training and supervision was obvious. North Wildwood's seasonal entertainment district produces frequent late-night disputes between bar staff and patrons, and NWPD officers charge disorderly-persons offenses on their own certification, without judicial review.
54. Upon information and belief, the NWPD Chief of Police, the final policymaker for NWPD arrest, charging, and supervisory practices, learned of Plaintiff's arrest and charge within days, through NWPD's coordination with the New Jersey State Police. Neither the Chief of Police nor any NWPD supervisor caused the charge to be reviewed, corrected, or withdrawn. No Officer Defendant was disciplined.
55. Upon information and belief, each of the Doe Municipal Defendants, alone or together with the NWPD, established, maintained, or ratified the charging process, customs, and failures to train and supervise described in this section, or was responsible for the training, supervision, or discipline of one or more of the Officer Defendants.
56. These customs, failures to train and supervise, and acts of ratification were a moving force behind the violations of Plaintiff's rights described below.

Damages

57. As a direct and proximate result of Defendants' conduct, Plaintiff suffered a deprivation of liberty while subject to the charge; lost wages and benefits, including suspension without pay from the New Jersey State Police beginning July 8, 2024; the loss of his police powers; damage to his professional standing and reputation; the cost of defending the criminal charge; and severe emotional distress, humiliation, and anxiety.

COUNT ONE

42 U.S.C. § 1983 — Fabrication of Evidence (Fourteenth Amendment Due Process)
(Against Defendants Cruz and John Doe Police Officers 1-5, in their individual capacities)

58. Plaintiff repeats each allegation above as if fully set forth here.
59. Cruz fabricated evidence against Plaintiff. He swore in the Complaint-Summons that Plaintiff "engag[ed] in fighting, specifically by striking another individual with a closed fist multiple times," knowing that statement was false, or with reckless disregard for its truth.
60. Upon information and belief, John Doe Police Officers 1-5 supplied, approved, or ratified that false factual basis.
61. The fabricated statement was the factual basis of the charge, and it was used to initiate and maintain the prosecution of Plaintiff.
62. There is a reasonable likelihood that, absent the fabricated statement, Plaintiff would not have been charged. Hoffman's and Frame's reports do not support a charge that Plaintiff engaged in fighting.
63. The prosecution terminated without a conviction on June 17, 2025.
64. Cruz and John Doe Police Officers 1-5 acted intentionally, or with reckless and callous indifference to Plaintiff's federally protected rights.
65. As a direct and proximate result, Plaintiff suffered the damages described above.
66. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Cruz and John Doe Police Officers 1-5, in their individual capacities, jointly and severally, for:
    (a) compensatory damages;
    (b) punitive damages against each such Defendant;
    (c) reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and N.J.S.A. 10:6-2(f), as applicable;
    (d) pre-judgment and post-judgment interest; and
    (e) such other relief as the Court deems just and equitable.

COUNT TWO

42 U.S.C. § 1983 — Malicious Prosecution (Fourth and Fourteenth Amendments)
(Against Defendants Cruz, Hoffman, Frame, Santiago, and John Doe Police Officers 1-5, in their individual capacities)

67. Plaintiff repeats each allegation above as if fully set forth here.
68. Cruz initiated a criminal proceeding against Plaintiff by signing the Complaint-Summons. Hoffman, the arresting officer of record whose report was filed under Plaintiff's summons number, Frame, who arrested Plaintiff, Santiago, who supervised and assigned the arrest, and John Doe Police Officers 1-5 influenced and participated in the decision to charge Plaintiff, including, upon information and belief, by supplying or approving the false factual basis on which the charge rested.
69. They initiated the proceeding without probable cause. The only factual basis stated for the charge was false, and the officers' own observations did not establish that Plaintiff had engaged in fighting.
70. They acted maliciously, or for a purpose other than bringing an offender to justice: to justify an arrest that the officers' own observations did not support.
71. The proceeding ended without a conviction when the charge was dismissed on June 17, 2025.
72. As a consequence of the proceeding, Plaintiff suffered a deprivation of liberty consistent with the concept of seizure. He was held in custody at NWPD headquarters while the charge was processed and released only on the summons. He was then required to answer the

charge and to remain subject to the Municipal Court's jurisdiction for approximately one year.

73. As a direct and proximate result, Plaintiff suffered the damages described above.
74. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Cruz, Hoffman, Frame, Santiago, and John Doe Police Officers 1-5, in their individual capacities, jointly and severally, for:
    - (a) compensatory damages;
    - (b) punitive damages against each such Defendant;
    - (c) reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and N.J.S.A. 10:6-2(f), as applicable;
    - (d) pre-judgment and post-judgment interest; and
    - (e) such other relief as the Court deems just and equitable.

<u>COUNT THREE</u>

42 U.S.C. § 1983 — Failure to Intervene

(Against Defendants Santiago, Hoffman, Frame, and John Doe Police Officers 1-5, in their individual capacities)

75. Plaintiff repeats each allegation above as if fully set forth here.
76. Santiago, Hoffman, Frame, and John Doe Police Officers 1-5 knew that the sworn factual basis of the charge against Plaintiff was not supported by what any officer had observed.
77. Each had a realistic and reasonable opportunity to intervene — before the Complaint-Summons issued, while Plaintiff was being processed at NWPD headquarters, and afterward while the charge remained pending — to prevent or correct the fabricated charge and the prosecution that followed.
78. Each failed to intervene.
79. As a direct and proximate result, Plaintiff suffered the damages described above.
80. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Santiago, Hoffman, Frame, and John Doe Police Officers 1-5, in their individual capacities, jointly and severally, for:
    - (a) compensatory damages;
    - (b) punitive damages against each such Defendant;
    - (c) reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and N.J.S.A. 10:6-2(f), as applicable;
    - (d) pre-judgment and post-judgment interest; and
    - (e) such other relief as the Court deems just and equitable.

<u>COUNT FOUR</u>

42 U.S.C. § 1983 — Official-Capacity and Municipal Liability

(Against Defendants Santiago, Cruz, Hoffman, and Frame, in their official capacities, and Defendants Doe Municipality 1-5)

81. Plaintiff repeats each allegation above as if fully set forth here.
82. The constitutional violations alleged in Counts One through Three were caused by the official policies, customs, and practices of the NWPD and the Doe Municipal Defendants, their failure to train and supervise, and their ratification, as described above. Specifically:
    - (a) the custom of approving disorderly-persons charges on unverified accounts from bar and nightclub staff, without reconciling them with officers' own observations;
    - (b) a supervisory review process that, as actually practiced, approved sworn charging documents unsupported by the reports beneath them, even though that review was the only check before an officer-issued charge;

(c) the failure to train and supervise officers, including Class II Special Law Enforcement Officers, on probable cause and on truthful statement of the factual basis of a sworn charge, despite an obvious need; and
(d) the ratification of the charge by NWPD command, which had the footage and reports within days and left the charge in place.

83. The policymakers of the NWPD and of the Doe Municipal Defendants acted with deliberate indifference to the known or obvious consequence that these practices would result in fabricated charges and prosecutions without probable cause.
84. These policies, customs, failures, and ratification were a moving force behind the violation of Plaintiff's rights.
85. As a direct and proximate result, Plaintiff suffered the damages described above.
86. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Santiago, Cruz, Hoffman, and Frame, in their official capacities, and Defendants Doe Municipality 1-5, jointly and severally, for:
    (a) compensatory damages;
    (b) reasonable attorneys' fees and costs under 42 U.S.C. § 1988;
    (c) pre-judgment and post-judgment interest; and
    (d) such other relief as the Court deems just and equitable.

<u>COUNT FIVE</u>
New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c)
(Against Defendants Santiago, Cruz, Hoffman, Frame, and John Doe Police Officers 1-5, in their individual capacities)

87. Plaintiff repeats each allegation above as if fully set forth here.
88. Article I, Paragraph 7 of the New Jersey Constitution protects Plaintiff from unreasonable seizure. Article I, Paragraph 1 protects him from deprivation of liberty without due process of law.
89. Acting under color of law, the Officer Defendants deprived Plaintiff of those rights, and of the rights secured by the Fourth and Fourteenth Amendments, through the fabrication of evidence alleged in Count One, the malicious prosecution alleged in Count Two, and the failure to intervene alleged in Count Three.
90. As a direct and proximate result, Plaintiff suffered the damages described above.
91. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Santiago, Cruz, Hoffman, Frame, and John Doe Police Officers 1-5, in their individual capacities, jointly and severally, for:
    (a) compensatory damages;
    (b) punitive damages against each such Defendant;
    (c) reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and N.J.S.A. 10:6-2(f), as applicable;
    (d) pre-judgment and post-judgment interest; and
    (e) such other relief as the Court deems just and equitable.

<u>COUNT SIX</u>
New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) — Official-Capacity and Municipal Liability
(Against Defendants Santiago, Cruz, Hoffman, and Frame, in their official capacities, and Defendants Doe Municipality 1-5)

92. Plaintiff repeats each allegation above as if fully set forth here.
93. The deprivations of Plaintiff's state constitutional rights alleged in Count Five were caused by the official policies, customs, and practices of the NWPD and the Doe Municipal

Defendants, their failure to train and supervise, and their ratification, as alleged in Count Four.

94. As a direct and proximate result, Plaintiff suffered the damages described above.

95. WHEREFORE, Plaintiff Montel Pitt demands judgment against Defendants Santiago, Cruz, Hoffman, and Frame, in their official capacities, and Defendants Doe Municipality 1-5, jointly and severally, for:

    (a) compensatory damages;
    (b) reasonable attorneys' fees and costs under N.J.S.A. 10:6-2(f);
    (c) pre-judgment and post-judgment interest; and
    (d) such other relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

I certify under penalty of perjury that the matter in controversy is related to the subject of the following action pending in another court: *Montel Pitt v. City of North Wildwood, John Doe Police Officers 1-5, Exit 6 Bar, and John Doe Security Personnel*, Docket No. CPM-L-000137-26, Superior Court of New Jersey, Law Division, Cape May County. The parties to that action are Plaintiff Montel Pitt; Defendant City of North Wildwood; Defendants John Doe Police Officers 1-5, who were dismissed without prejudice by Notice of Dismissal filed on October 28, 2026; Defendant Exit 6 Bar (B Plus G LLC d/b/a Exit 6); and Defendants John Doe Security Personnel. By Order dated October 9, 2026, the Superior Court dismissed Plaintiff's claims against the City of North Wildwood in that action with prejudice. Plaintiff has moved, returnable November 13, 2026, to modify that Order so that the dismissal is without prejudice. I am aware of no pending arbitration or administrative proceeding concerning the matter in controversy.

## CERTIFICATION PURSUANT TO L.CIV.R. 201.1

I certify that this action is not eligible for compulsory arbitration under L.Civ.R. 201.1(d)(2)(A) because Plaintiff's claims are based on alleged violations of rights secured by the Constitution of the United States, and further certify under L.Civ.R. 201.1(d)(3) that the damages recoverable exceed $150,000, exclusive of interest, costs, and any claim for punitive damages.

## DESIGNATION OF TRIAL COUNSEL

Tyrone A. Blackburn, Esq. is designated as trial counsel for Plaintiff.

Dated: October 28, 2026

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. BLACKBURN LAW, PLLC
Attorneys for Plaintiff Montel Pitt